[No. C049330. Third Dist. Apr. 27, 2006.]

Estate of ANDREW J. ROSSI, SR., Deceased.
ANDREW J. ROSSI, JR., Petitioner and Respondent, v.
TOINETTE ROSSI, Objector and Appellant.

**COUNSEL**

John A. Hartog for Objector and Appellant.

Horton & Roberts, Neil F. Horton; Rosenberg Law Firm and Richard D. Rosenberg for Petitioner and Respondent.

**OPINION**

**CANTIL-SAKAUYE, J.**—Andrew J. Rossi, Jr. (John), filed an application pursuant to Probate Code section 21320[1] to determine whether the probate petitions he planned to file would violate the no contest clauses in the will and declaration of trust (trust) executed by his father, the decedent Andrew J. Rossi, Sr. (Andrew), in November 2003. Relying on section 21305, subdivision (a), the trial court ruled the proposed petitions would not constitute contests and granted John's application.

Toinette Rossi (Toinette), John's sister and trustee of Andrew's trust, appeals the trial court order. She argues: (1) the court lacked subject matter jurisdiction because John's section 21320 application was defective as a matter of law; and (2) even if John's application was properly before the trial court, section 21305, subdivision (a)(3) did not apply to the proposed petition to invalidate the second amendment to the trust (second amendment).[2] We reject Toinette's claims of error and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2003, Andrew executed a pour-over will and revocable trust which made specific gifts to his wife Kathryn and left the balance of the estate in equal shares to John, Toinette and Valerie Rossi, his children from a previous marriage. Attached to the trust was a schedule of assets which included "[s]hares of the capital stock of the Delta National Bancorp."

The trust and will each contained a no contest clause and both clauses referred to the will and the trust. The sixth article of the will set forth the no contest clause as follows: "In the provisions of this Will and in the Trust established by me on the same day that I am signing this Will and which is described in ARTICLE THIRD above, I have purposely made no other provisions for any of my heirs. If any person or persons, whether an heir of mine or not, should contest in any court the validity or the terms of this Will or of the Trust described in ARTICLE THIRD above, I give such person or

---

[1] Undesignated statutory references are to the Probate Code.

Section 21320 is described as a "safe harbor" through which a beneficiary can ask the trial court to determine whether a proposed petition, motion, or action constitutes a will contest. (*Zwirn v. Schweizer* (2005) 134 Cal.App.4th 1153, 1155, fn. 4 [36 Cal.Rptr.3d 527].) Subdivision (a) provides: "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause."

[2] Toinette states in her reply brief that the question of safe harbor relief for the Delta National Bancorp stock petition under section 21305, subdivision (a)(2) is moot. Accordingly, we do not address that issue.

persons so contesting the sum of ONE DOLLAR ($1.00) and no more in lieu of any other provisions that I have made for such person or persons in this Will or in the Trust."

The third article of the will read in relevant part: "I give my entire estate, in trust, to Toinette Rossi as Successor Trustee of the Trust executed on the same date as I am signing this Will, but prior thereto, under which I am the Settlor and the Trustee, and Toinette Rossi is the Successor Trustee, and I direct that the residue of my estate shall be added to, administered and distributed as a part of that trust, according to the terms of that trust on the date of my death, giving effect to any amendments made to it prior to the date of my death, and any amendments thereafter made in accordance with the terms of that trust by the exercise of a power of amendment, appointment, withdrawal, or otherwise."

The 16th article of the trust set forth the no contest clause as follows: "In the event any beneficiary under this trust shall, singly or in conjunction with any other person or persons, contest in any Court the validity of this trust or of the Settlor's last Will or shall seek to obtain an adjudication in any proceeding in any Court that this trust or any of its provisions or that such Will or any of its provisions is void, or seek otherwise to void, nullify or set aside this trust or any of its provisions, then the right of that person to take any interest given to him or her by this trust shall be determined as it would have been determined had the person predeceased the execution of this Declaration of Trust."

Andrew executed three amendments to the trust before his death in November 2004. At issue in this appeal is the second amendment. The second amendment, executed in April 2004, reduced John's share of trust assets.[3] The second amendment did not include a no contest clause.

On September 9, 2004, John filed an application pursuant to section 21320 seeking a declaration that the no contest clauses of Andrew's will and trust would not apply to three proposed petitions. John did not attach the proposed petitions to the application. He described the proposed petitions in the application as seeking: (1) invalidation of the second and third trust amendments on grounds of undue influence; (2) the return of the Delta National Bancorp stock that John had purchased and placed in Andrew's safe; and (3) removal of Toinette as successor trustee.

---

[3] The second amendment reduced John's share by: (1) distributing stock in Delta National Bancorp to Toinette and Valerie on condition they pay John $1 million or $500,000 each; (2) depriving John of his one-third share of stock in Isone, Inc., which was distributed equally between Toinette and Valerie; and (3) distributing 74 acres of real property known as Jack Tone Westyne to Toinette as her separate property.

Toinette objected to the application. She argued the exception in section 21305, subdivision (a)(2) and (3) did not apply and John's failure to attach drafts of his proposed petitions rendered the application defective as a matter of law. Thereafter, John narrowed his challenges to include only his claim to the Delta National Bancorp stock and his claim to invalidate the second amendment for undue influence. Before the hearing on the application, John filed and served drafts of the two proposed petitions, which were attached as exhibits to his attorney's declarations.

The court heard oral argument on John's application in January 2005, and ruled in his favor. This appeal ensued.

## DISCUSSION

## I

### *The Statutory Scheme*

"An ad terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided therein. [Citation.] In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument." (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92] (*Burch*).)

A. *A Brief History of the "No Contest Clause"*

"Prior to 1984, under common law, some courts used strict construction to interpret a 'no contest clause.' A beneficiary's action would only constitute a contest[] if the clause stated that the action was considered a contest or the terms of the will evidenced the testator's intention for such an action to be construed as a contest. On the other hand, other courts used broad construction of the 'no contest' clause and found any action threatening the execution of the will or part of a will to be a contest . . . ." (*Review of Selected 2000 California Legislation, Estates and Trusts Chapter 17: An Attempt to Improve the Existing Probate Law* (2001) 32 McGeorge L.Rev. 681, 684, fns. omitted.)

"In 1989 the Legislature codified within the Probate Code much of the existing case law governing enforcement of no contest clauses. (Stats. 1989, ch. 544, § 19, p. 1825; repealed and reenacted by Stats. 1990, ch. 79, § 14, p. 463, operative July 1, 1991.) . . . In proposing the codification, the Law Revision Commission commented in part: 'A major concern with the application of existing California law is that a beneficiary cannot predict with any

consistency when an activity will be held to fall within the proscription of a particular no contest clause. To increase predictability, the proposed law recognizes that a no contest clause is to be strictly construed in determining the donor's intent. This is consistent with the public policy to avoid forfeiture absent the donor's clear intent. The law also makes clear that a request by a beneficiary for declaratory relief in the form of a petition for construction of the instrument to determine whether a particular activity would violate a no contest clause does not itself trigger operation of the clause.' (20 Cal. Law Revision Com. Rep. (Jan. 1989) p. 12, fns. omitted.)" (*Genger v. Delsol* (1997) 56 Cal.App.4th 1410, 1419 [66 Cal.Rptr.2d 527] (*Genger*).)

Consistent with the common law understanding of the term, the 1989 legislation defined "no contest clause" as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary brings a contest." (Former § 21300, subd. (b); Stats. 1990, ch. 79, § 14, p. 972.16.) In addition, the 1989 law provided that "[i]n determining the intent of the transferor, a no contest clause shall be strictly construed." (§ 21304; Stats. 1989, ch. 544, § 19, p. 1825; Stats. 1990, ch. 79, § 14, p. 972.16.) Section 21301 also clarified that the 1989 legislation was "not intended as a complete codification of the law governing enforcement of a no contest clause. The common law governs enforcement of a no contest clause to the extent this part does not apply." (Stats. 1989, ch. 544, § 19, p. 1825; Stats. 1990, ch. 79, § 14, p. 972.16.)

In spite of the Legislature's admonition that no contest clauses "shall be strictly construed" (§ 21304), the response of California courts was inconsistent. One line of cases held that broadly worded no contest clauses applied to nontestamentary documents included in an integrated estate plan, even though the no contest clause referred only to contests of testamentary documents. (See, e.g., *Burch, supra,* 7 Cal.4th at pp. 251–252, 263–266, 273 [surviving wife's assertion of community property and federal pension rights in trust assets, which included stocks, a pension plan account and life insurance, violated the no contest clause because the assets were part of her deceased husband's integrated estate plan]; *Genger, supra,* 56 Cal.App.4th 1410, 1421–1422 [surviving wife's challenge to a corporate stock exchange agreement violated the no contest clause because it was the cornerstone of her deceased husband's integrated estate plan].)

B. *Section 21305 and No Contest Clauses*

In 2000, the Legislature amended the law governing no contest clauses, adding section 21305. (Stats. 2000, ch. 17, §§ 5, 6, 7.) The new section, effective January 1, 2001 (Cal. Const., art. IV, § 8, subd. (c)), listed for the first time actions that did not constitute contests "unless expressly identified

in the no contest clause as a violation of the clause." (Former § 21305, subd. (a).; Stats. 2000, ch. 17, § 5.) Section 21305, subdivision (b) listed proceedings that did not violate no contest clauses as a matter of public policy. (Former § 21305, subd. (b); Stats. 2000, ch. 17, § 5.) Section 21305, subdivision (c) provided that nothing in the section shall apply to a codicil under certain circumstances. (Former § 21305, subd. (c), Stats. 2000, ch. 17, § 5.)

Subdivisions (a) and (c) of section 21305 (subdivision (a) and subdivision (c)) are relevant to Toinette's appeal. The 2000 version of subdivision (a) read in full: "(a) For instruments executed after the effective date of this section, the following actions shall not constitute a contest unless expressly identified in the no contest clause as a violation of the clause:

"(1) The filing of a creditor's claim or prosecution of an action based upon it.

"(2) An action or proceeding to determine the character of property.

"(3) A challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause.

"(4) A petition for settlement or for compromise affecting the terms of the instrument." (Stats. 2000, ch. 17, § 5.)

The 2000 version of subdivision (c) read: "Nothing in this section shall apply to a codicil executed after January 1, 2001, unless the codicil specifically adds or amends a no contest clause contained in the will or other testamentary instrument executed before January 1, 2001." (Stats. 2000, ch. 17, § 5.)

In 2002, the Legislature amended section 21305. Subdivision (a) now reads: "For instruments executed on or after January 1, 2001, the following actions do not constitute a contest unless expressly identified in the no contest clause as a violation of the clause:

"(1) The filing of a creditor's claim or prosecution of an action based upon it.

"(2) An action or proceeding to determine the character, title, or ownership of property.

"(3) A challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause." (Stats. 2002, ch. 150, § 2.)

Subdivision (c) now reads: "Subdivision (a) does not apply to a codicil or amendment to an instrument that was executed on or after January 1, 2001, unless the codicil or amendment adds a no contest clause or amends a no contest clause contained in an instrument executed before January 1, 2001." (Stats. 2002, ch. 150, § 2.)

■ By the terms of the 2002 statute, subdivision (a) is applicable to instruments executed on or after January 1, 2001. Instruments executed before January 1, 2001, are not subject to the requirements of subdivision (a), and continue to be governed by the rule of strict construction and the common law. (§§ 21301, 21304, & 21305.)

## II

### *Subject Matter Jurisdiction*

John's section 21320 application described the proposed petitions he intended to file, but he did not attach the proposed petitions to the application. However, before the January 10, 2005, hearing, John submitted two attorney declarations with the proposed petitions attached as exhibits. Each declaration stated the petitions were "in substantially the form [John] will file if the court determines that his proposed petition will not violate the no contest clauses . . . ." John did not seek leave to amend his original application to include the proposed petitions.

At the hearing, Toinette's attorney complained that John's application was defective because the "proposed actions were not attached to the original application." He argued the delay "made it impracticable, if not impossible, for the trustee to prepare a response for the benefit of the court addressing the particular proposed action." John's attorney conceded it was "good practice to attach copies of what you propose to file. We didn't do that timely, but we did do it, and I don't believe that . . . [Toinette] has been prejudiced by the tardiness. They've known from the get-go what it is we were seeking to do."

The trial court addressed the issue in its written order: "At the outset the Court must determine whether [John] may amend to attach two proposed Petitions and withdraw one. [Toinette] objects on multiple grounds without setting forth any prejudice she would suffer should the amendment be granted. Undoubtedly, there is some advantage she believes will be lost, but that is not determinative. [Toinette's] motion to strike is denied." The court proceeded to grant John's petition for declaratory relief "as amended."

On appeal, Toinette argues there are several reasons the trial court lacked subject matter jurisdiction. First, she contends section 21320, subdivision (a)

required John to specifically identify the " 'particular motion, petition, or other act . . .' for which he sought safe harbor." Toinette maintains it was not enough for John to tell the court "what he might file." She argues "John's lawyers only declared that their submissions [the proposed petitions] were 'in substantially the form . . .' " they would file. Second, Toinette contends John's application is fatally defective because he never sought to amend his application to attach the proposed petitions and, contrary to the trial court's ruling, "there is no 'amended petition' in the record."[4] Third, citing section 1021, Toinette asserts "[t]he application is defective because the pleading in which the particularized description of the nature and grounds of each proposed action is stated is not verified by John, as applicant."[5] We conclude there is no merit in Toinette's contention the trial court lacked subject matter jurisdiction.

We agree with Toinette that specificity is important because the trial court must be able to determine from the section 21320 application whether the proposed action is entitled to safe harbor. However, nothing in the language of section 21320 supports Toinette's argument the proposed petitions must be submitted at the same time as the application. John filed the proposed petitions by fax on December 27, 2004, and January 3, 2005. Thus, the petitions were before the court well before the January 10, 2005, hearing on John's application. While Toinette's attorney claimed the delay "made it impracticable, if not impossible, . . . to prepare a response for the benefit of the court addressing the particular proposed action," he nonetheless argued at length on the merits of John's application.

Although the court misspoke when it characterized the declarations and proposed petitions as amendments to the original section 21320 application, it properly considered them as part of John's application for the reason we explained. "The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it

---

[4] We granted Toinette's requests to augment the record with John's "Petition to Determine Ownership of Trust Property and for Order Directing Trustee to Transfer Property to Petitioner," filed in superior court in March 2005, and the notice of John's withdrawal of that petition, filed in superior court in December 2005. The petition filed by John in superior court was exactly the same as the proposed petition attached to his attorney's declaration.

[5] Section 1021 provides, in part: "(a) All of the following shall be verified: [¶] (1) A petition, report, or account filed pursuant to this code. . . . [¶] . . . [¶] (b) Except as provided in Section 1023, the verification shall be made as follows: [¶] (1) A petition shall be verified by the petitioner or, if there are two or more parties joining in the petition, by any of them."

must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

 Toinette is also correct that section 1021, subdivision (a) requires probate petitions to be verified before they are "*filed* pursuant to this code . . . ." (Italics added.) However, the two proposed petitions were attached as exhibits to the attorney declarations to show what John planned to file if the court declared that the proposed actions would not violate the no contest clauses in Andrew's will and trust. Moreover, as stated in oral argument, verification of the proposed petition would "box in" the petitioner and is not required by the statute. Section 21320 does not require that the "particular motion, petition, or other act by the beneficiary" be in the form of a verified pleading.

### III

### *John's Challenge to the Second Amendment*

Toinette contends subdivision (a) is inapplicable to the second amendment and therefore John's proposed petition challenging its validity on grounds of undue influence is a contest within the terms of the no contest clauses contained in Andrew's will and trust. The trial court found the legislative materials "inconclusive" and determined that "[a]t the end of it all, Section 21305(a)(3) must be read for itself, without the preconceptions of a probate lawyer steeped in traditional practice. It requires an explicit mention of the amendment, or codicil, in the original no-contest clause or the amendment/codicil must contain a no-contest clause. As the Senate Judiciary Committee analysis proclaimed: 'generic no contest clauses [are] obsolete.' "

On appeal, Toinette asserts for the first time that subdivision (a) does not apply "because subdivision (c) says it does not." Alternatively, Toinette argues subdivision (a) is inapplicable "because an amendment becomes part of the trust and is therefore encompassed within a no contest clause that protects the trust from attack." Citing legislative history, she also suggests subdivision (a)(3) applies only to nontestamentary instruments.

In this case we address the simple question whether the safe harbor provision of subdivision (a)(3) applies to a proposed petition to challenge a trust amendment, when the trust, will and amendment were all executed after January 1, 2001, the effective date of the statute.

We begin with three observations. First, it is uncontested that Andrew executed his will, trust, and the trust amendments after the January 1, 2001

effective date of section 21305. Second, these documents are all "instruments" within the meaning of section 45 because they are "a will, trust, . . . or other writing that designates a beneficiary or makes a donative transfer of property." Third, Toinette confuses the process of interpreting a will or trust for purposes of ascertaining the decedent's intent with the process of construing a statute for purposes of effectuating the Legislature's intent.

Toinette attempts to evade the application of subdivision (a)(3) by suggesting various ways the second amendment was incorporated into the provisions of the original trust and was therefore *not an instrument "other than the instrument containing the no contest clause."* (Subd. (a)(3), italics added.) Her contention on this point seems to be that since the second amendment is part of the original instrument containing the no contest clause, it is the instrument containing the no contest clause and under the language of subdivision (a)(3) cannot be challenged.

The interpretation of section 21305 is a question of law subject to our independent review on appeal. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672] (*Burden*).) For reasons we shall explain, we conclude subdivision (a)(3) applies to John's challenge to the second amendment and the trial court properly ruled in his favor.

### A. *The Rules of Statutory Interpretation*

■ The purpose of statutory interpretation is to ascertain and effectuate legislative intent. (*Burden, supra,* 2 Cal.4th at p. 562.) To determine the Legislature's intent, courts " 'look first to the language of the statute, giving effect to its "plain meaning." ' " (*Ibid.,* quoting *Kimmel v. Goland* (1990) 51 Cal.3d 202, 208–209 [271 Cal.Rptr. 191, 793 P.2d 524].) However, "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "Finally, it is well settled 'that in attempting to ascertain the legislative intention effect should be given, whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.' " (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 18 [270 Cal.Rptr. 796] (*Psychology Providers*).)

### B. *Interpretation of Subdivision (c)*

Toinette mentioned subdivision (c) in the papers she filed in opposition to John's section 21320 application. She now cites subdivision (c) on appeal for

the proposition that the second amendment became part of a single, integrated trust document. Neither party referred to subdivision (c) at the hearing on John's application, and the court did not address subdivision (c) in its order. We shall consider the interpretation of subdivision (c) in spite of Toinette's change of theory because it raises a pure question of law on undisputed facts and the issue has been briefed on appeal. (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1459 [118 Cal.Rptr.2d 118]; see also *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 195 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

As we explained, subdivision (c) now reads: "Subdivision (a) does not apply to a codicil or amendment to an instrument that was executed on or after January 1, 2001, unless the codicil or amendment adds a no contest clause or amends a no contest clause contained in an instrument executed before January 1, 2001."

Referring to subdivision (c), Toinette argues "[t]he Second Amendment made no alteration to the no contest clause in the original Declaration [of trust]. Therefore, by the statute's own terms it does not apply to the Second Amendment. In short, the no contest clause in Andrew's Declaration applies to the Second Amendment. [¶] The import of subdivision (c) is that all of the Trust amendments should be considered as part of a single document, unless the later instrument contains its own no contest clause." Toinette concludes that "subdivision (c) provides that subdivision (a) will not treat the Second Amendment as 'an instrument . . . other than the instrument containing the no contest clause' [subd. (a)(3)] because the Declaration and the Second Amendment form a single, integrated document, all of which were executed after the Effective Date." Essentially, Toinette attempts to shield the second amendment from challenge by contending it is in the instrument containing the no contest clause and therefore subdivision (a)(3) does not apply. Furthermore she argues subdivision (c) further immunizes the second amendment from challenge because the second amendment did not add or amend a no contest clause and therefore according to the language of subdivision (c), subdivision (a) does not apply.

We reject Toinette's reading of subdivision (c). Toinette's interpretation suggests subdivision (a) is inapplicable so long as an amendment makes no change in the no contest clause of the original trust instrument or declaration, regardless of whether the decedent executed the original instrument before or after January 1, 2001, the effective date of section 21305. Such an interpretation renders superfluous the last phrase of subdivision (c), "contained in an instrument executed before January 1, 2001."

Moreover, the plain language of the first clause of subdivision (c) provides that subdivision (a) does not apply to a codicil or amendment to an

instrument executed on or after January 1, 2001. This is so because the instrument itself, executed on or after that date is already subject to subdivision (a). Subdivision (c) merely clarifies that a testator or settlor with a post-2001 will or trust that already contains a no contest clause that meets subdivision (a)'s specificity requirements need not repeat the no contest clause in a codicil or amendment in order to have the no contest clause apply to the will or trust.

This interpretation harmonizes subdivision (c) with subdivision (a)(3). In subdivision (a)(3), an action may be granted safe harbor and challenge the "validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause." The language in subdivision (a)(3) clearly recognizes instruments or other documents separate from the instrument containing the no contest clause, and that those separate instruments or documents may be the subject of a safe harbor challenge. Here, the second amendment is such a document. It is separate from the instrument containing the no contest clause since it does not contain a no contest clause. And it is subject to challenge without violating the no contest clause of the instrument, because the instrument's no contest clause language failed to expressly identify the action as a violation.

The Rossi will and trust instruments, executed in 2003 after the effective date of the statute, failed to comply with section 21305 requiring that the enumerated actions be expressly identified in the no contest clause as violations in order to constitute a contest. The second amendment was therefore subject to challenge under subdivisions (a)(3) and (c).

Subdivision (c) also applies to a situation, not applicable here, where the instrument is executed before January 1, 2001, and a codicil or amendment to it adds or amends a no contest clause. If a codicil or amendment adds or amends a no contest clause contained in a pre-January 1, 2001, instrument, then subdivision (a), and the specificity requirements for a no contest clause would be triggered.

■ Toinette's interpretation also ignores the placement of subdivision (c) in the statute itself, when considered in the context of the entire statute. (*Psychology Providers, supra,* 51 Cal.3d at p. 18.) By its terms, section 21305 applies prospectively to "instruments executed on or after January 1, 2001." (Subd. (a).) Subdivision (c) helps clarify what happens when the instrument containing the no contest clause is executed before January 1, 2001, and a codicil and/or amendment is executed after that date. Thus, the plain language of subdivision (a) places new requirements of specificity on the no contest clauses contained in instruments executed on or after January 1, 2001. Andrew's will, trust and amendments were all executed after January 1, 2001, and are thus subject to the new specific requirements.

As to wills, trusts, codicils and amendments executed before January 1, 2001, the common law and rule of strict construction continue to govern. The prospective application of section 21305 preserves estate plans already in place when the Legislature adopted section 21305 in 2000. (§§ 21301, 21304, & 21305.)

The wording of the 2000 version of subdivision (c) further supports our interpretation.[6] If the testator or settlor of a pre-January 1, 2001 instrument never revisits the original no contest clause and a codicil or amendment neither adds nor changes it, then common law and the rule of strict construction govern the no contest clause of the estate plan as written. If, on the other hand, a codicil or amendment "adds a no contest clause or amends a no contest clause contained in an instrument executed before January 1, 2001," the specificity requirements of subdivision (a) apply. Our interpretation of section 21305 as a whole reflects fundamental fairness. It gives effect to the Legislature's clear intent that section 21305 apply prospectively. It also effectuates the Legislature's intent that beginning on January 1, 2001, testators and settlors expressly identify in no contest clauses—whether they appear in wills, trusts, codicils or amendments—the actions that violate the no contest clauses.

We decline both parties' invitation to consider legislative history to resolve what they describe as ambiguities in subdivision (c). As we explained, the language of section 21305, read as a whole, reveals the legislative intent and defeats Toinette's argument that subdivision (c) renders subdivision (a) inapplicable to the instruments at issue in this appeal.

C. *Application to Nontestamentary Instruments*

Toinette's claim subdivision (a)(3) applies only to nontestamentary documents also fails. Although *Burch* and *Genger*, cases that purportedly prompted the Legislature to enact section 21305, read no contest clauses broadly to include nontestamentary documents (*Burch, supra,* 7 Cal.4th at pp. 251–252, 263–266, 273; *Genger, supra,* 56 Cal.App.4th at pp. 1421–1422), there is nothing in the language of subdivision (a)(3) that suggests the Legislature intended to restrict the application of subdivision (a) in a similar manner. The statute refers to challenges to the validity of "an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause." The definition of "instrument" includes both wills, which are testamentary (Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 174), as well as trusts, deeds, and "other writing[s] that designate[] a beneficiary or makes a donative transfer of

---

[6] See page 1332, *ante.*

property." (§ 45.) Whether an inter vivos trust is testamentary is therefore of no consequence in determining whether subdivision (a)(3) applies to John's proposed challenge to the second amendment.

### D. *The Question of Andrew's Intent*

Toinette argues the court erred because Andrew intended that "when determining whether any legal action would constitute a contest of his Will and Trust, as amended, that they be read together. . . . Section 21305(a)(3) does not apply to Andrew's Will and Trust, as amended, because the no contest clause includes a contest of 'any provision' of the testamentary documents." She also emphasizes that the no contest clause of the will refers to another part of the will which "directs that the 'residue of my estate shall be added to, administered and distributed as a part of that trust, according to the terms of that trust on the date of my death, **giving effect to any amendments made to it prior to the date of my death**.' " (Original boldface.)

In support of her argument the second amendment was incorporated into the original trust declaration, Toinette cites *Estate of Wiemer* (1962) 209 Cal.App.2d 7 [25 Cal.Rptr. 693] and *Ike v. Doolittle* (1998) 61 Cal.App.4th 51 [70 Cal.Rptr.2d 887]. Both *Wiemer* and *Ike* are cases involving the interpretation of testamentary instruments and properly recite the rule that when construing a will or trust, the intent of the trustor prevails and " ' "must be ascertained from the whole of the trust instrument, not just separate parts of it. [Citation.]" ' " (*Ike, supra,* at p. 73, quoting *Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168 [11 Cal.Rptr.2d 448]; see *Wiemer, supra,* at p. 11.) *Weimer* also cautions that "the rule that two testamentary instruments should be construed together, 'like any other rule of construction, is but a guide for the purpose of ascertaining' " the intent of the testator. (*Wiemer, supra,* at p. 11.)

As we explained, we are concerned here with the intent of the Legislature, not Andrew's intent. Different rules apply and we look to the language of section 21305, not to the language of the instruments executed by Andrew, to determine whether John's proposed petition constitutes a contest under subdivision (a)(3). Thus, even if we were to accept Toinette's argument that the second amendment and the original trust together created a single, integrated document for purposes of determining Andrew's intent, the argument does not help her in the circumstances of this case. The will, trust and second amendment are separate instruments under section 45, and Andrew executed all three instruments in 2003, long after the effective date of section 21305. He was therefore subject to its provisions.

## DISPOSITION

The order is affirmed. Respondent shall recover costs on appeal. (Cal. Rules of Court, rule 27(a).)

Blease, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied May 22, 2006, and the opinion was modified to read as printed above.