Filed 3/12/14  Pakula v. Klein CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JULIE PAKULA, | B240523 |
| Petitioner and Appellant, | (Los Angeles County Super. Ct. Nos. BP120124, BP118404) |
| v. | |
| GARY KLEIN, | |
| Defendant and Respondent. | |

APPEAL from judgments and an order of the Superior Court of Los Angeles County, Reva G. Goetz, Judge.  Affirmed.

Pine & Pine, Norman Pine, Janet R. Gusdorff; Oldman, Cooley, Sallus, Gold, Birnberg & Coleman, Marshal A. Oldman and Sarah Talei for Petitioner and Appellant.

Lurie, Zepeda, Schmalz & Hogan, Steven L. Hogan and M. Damien Holcomb for Defendant and Respondent.

_____

In a consolidated appeal from separate probate court proceedings concerning the estate and the trust of Rina Pakula Klein,[1] Julie Pakula, Rina's mother and the successor trustee of the Rina Pakula Klein Living Trust, appeals two judgments and an order for probate dated April 11, 2012. Specifically, she contests the probate court's determination that the trust was limited to separate property and not did not contain community property interests. She further contends that the court should have designated a number of specific items of property as belonging to Rina's trust; that it should have stricken the petition to admit Rina's will to probate; and that it should not have appointed Rina's husband the executor of her estate. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Rina and Gary were married and had three children. They created a family trust with individual wills in 2007. In September 2008, Rina created a separate living trust providing that trust property be distributed to her children, with Pakula as successor trustee. Rina did not make a new will or amend her prior will.

Rina died on May 31, 2009. Gary, named as executor in Rina's will, petitioned for probate of the will, for letters testamentary, and for authorization to administer her estate. Pakula objected to Gary's petition, contending that the will was not valid; that signatures on the will and its first codicil were forged; and that Gary should not be the executor as he was under investigation in conjunction with Rina's death. Pakula petitioned for orders under Probate Code[2] section 850 determining particular real and personal property to be assets of the Rina Pakula Klein Living Trust.

Pakula propounded multiple written discovery requests to Gary and attempted to set his deposition. Gary declined to respond to the discovery and refused to be deposed, invoking the constitutional privilege against self-incrimination. Pakula moved to compel responses and to compel Gary's deposition. The probate court refused to compel the

---

[1] Because Rina Klein and her husband Gary Klein share a last name, we use their first names for clarity.

[2] All further statutory references are to the Probate Code.

2

deposition or to compel further responses to the discovery requests, but because of Gary's invocation of the privilege against self-incrimination, the court precluded Gary from testifying at the evidentiary hearing in the probate court proceedings.

The probate court conducted a bench trial encompassing Gary's petition to admit Rina's will to probate and for letters testamentary, Pakula's will contest, and Pakula's petitions to determine ownership under section 850. The will contest was effectively negated prior to trial when Pakula stipulated that Rina's will should be admitted to probate. The probate court concluded that Gary was eligible to act as executor, and it ruled that when Rina created her living trust, she effectively transferred all to it her separate property that had previously been held in the Klein Family Trust, but did not transfer any of her portion of the community property from the Klein Family Trust. The court admitted Rina's will to probate, appointed Gary executor of the estate, and ruled upon the petitions under section 850 based on its determination that the Rina Pakula Klein Living Trust held only Rina's separate property. Pakula appeals.

## DISCUSSION

### I.    Scope of Rina Pakula Klein Living Trust

Article One, section 1.03, subdivision (a) of the Rina Pakula Klein Living Trust provides, "By execution of this agreement, I transfer, convey and assign to my Trustee and my Trustee accepts and agrees to hold, the property described in Schedule A, annexed hereto, together with all my right, title and interest in and to all of my property that may by law be held in trust and that may, by this assignment, be transferred to my trust. This assignment shall include, without limitation, all real and personal, tangible and intangible property, located in the United States, whether separate or community, whether acquired before or after the execution of this agreement except for the following assets that are expressly not transferred to my trust by this assignment: [¶] Life insurance policies, unless the ownership of a policy is transferred to my trust by a separate instrument that specifically refers to such policy; [¶] Corporate and self-

3

employed ("Keogh") pension, profit sharing and stock bonus plans; [¶] Qualified retirement plans; [¶] Commercial annuities; [¶] Any property, the transfer of which would result in the immediate recognition of income subject to income or other taxes or the transfer of which would result in the loss of a homestead exemption or violate a restriction on transfer agreement." Schedule A listed "Ten Dollars Cash."

Article Two of the Rina Pakula Klein Trust provides, "This trust contains only separate property. I have chosen to leave that separate property to my children and not to my spouse."

Pakula contends on appeal that the probate court erred when it concluded that the Rina Pakula Klein Living Trust contained only Rina's separate property, and that the court should have determined that the trust contained not only her separate property but also Rina's share of the couple's community property. "The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George* (1994) 7 Cal.4th 246, 254, superseded by statute on other grounds as recognized in *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1331-1332, 1339.) Here, the probate court admitted extrinsic evidence and stated in its statement of decision that it had considered all evidence pleadings, evidence, and argument presented. Accordingly, we apply the substantial evidence standard of review. (*De Anza Enterprises v. Johnson* (2002) 104 Cal.App.4th 1307, 1315.)

Substantial evidence supports the probate court's conclusion that Rina's intent was to convey only her separate property to her living trust. An electronic mail message from Rina to her attorney days before she signed the trust instrument referred to the trust as "the separate property revocable trust we are creating," and asked whether she should have her husband sign an agreement concerning money she had received before she moved that money "into a separate property trust so there is not a claim that I put community property in the separate property trust?" Shortly after signing the trust instrument, Rina sent another electronic message describing the trust as "a separate property trust for me" to use "for separate assets." The attorney who prepared the trust

4

instrument testified that the general funding language in Article One was language from the computerized document drafting program she used. This tends to support the conclusion that the Article One language was not expressive of Rina's intent but that the more specific language of Article Two articulating an intent to convey only separate property actually expressed Rina's wishes.

This conclusion is consistent with the general principles for construction of an instrument. In the construction of an instrument, "a particular intent will control a general one that is inconsistent with it," (Code Civ. Proc., § 1859), and "Particular expressions qualify those which are general." (Civ. Code, § 3534.) Here, Rina's specific statement of intent that her trust contain only her separate property in Article Two controls over the very general language conveying all property that can be held in trust, subject to standard exceptions, to the trust. (Code Civ. Proc., § 1859; Civ. Code, § 3534; *Estate of Cox* (1970) 8 Cal.App.3d 168, 199 [trust language providing for alternate methods of distribution in the event that powers reserved elsewhere in the trust are not exercised is general and therefore subordinate to the specific provisions on the manner of exercise of trust powers]; *In re Greenleaf's Estate* (1951) 101 Cal.App.2d 658, 664-665 [the specific direction that trust income and funds from the sale of trust property be distributed to one beneficiary controls over a general grant of discretion to trustee to dispose of trust property].)

### A. Pakula's Arguments

#### 1. Interpretation of the Trust Language

Pakula contends that the court "ignored" Article One and "relied exclusively upon" the language in Article Two. We do not understand the court's finding that Article Two reveals Rina's intent to indicate a disregard of the language in Article One; rather, it appears the court concluded, based on the trust instrument and the extrinsic evidence, that the specific description of the trust contents in Article Two directly expressed Rina's intent. Pakula next asserts that the interpretation of the trust must be incorrect because the ten dollars that funded Rina's trust must be presumed to be community property; and

5

that therefore the trust contained community property.  We decline to consider this new theory of the import of the origin of these funds on the interpretation of Rina's intent in creating the trust because Pakula does not appear to have raised it in the probate court. "Because this theory is presented for the first time on appeal, this court will not consider it. . . .  [P]arties are not permitted to '"adopt a new and different theory on appeal.  To permit [them] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." [Citations.]' [Citations.]"].) (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.)

Next, Pakula contends that the trust contained other language that contradicted the probate court's interpretation of the instrument.  That the trust language is internally in conflict regarding the trust's contents is beyond dispute.  The probate court concluded, based on the instrument and extrinsic evidence, that Rina's intent was to convey her separate property to the trust, and that conclusion is supported by substantial evidence. Pakula's arguments about the way the trust could have been interpreted do not demonstrate that the probate court's interpretation was not supported by substantial evidence.

### 2. Application of Legal Principles

Pakula argues that the probate court failed to apply controlling principles for the interpretation of a trust.  The record does not contain any support for Pakula's characterization of the court as acting with "no principled legal basis for resolving the conflict" in this manner, "simply . . . selecting the narrower of the conflicting statements without applying any of the applicable rules of construction."  We decline to assume that the succinctness of the court's discussion of Rina's intent indicates insufficient analysis or arbitrary decision making.  The court expressly noted that it had considered all pleadings, evidence, and argument presented, and its decision that Article Two rather than Article One indicated Rina's intent was supported by the law, the language of the trust instrument, and extrinsic evidence.

6

Pakula argues that section 21120 should have caused the probate court to conclude that Rina intended to convey her community property interests to the trust. Section 21120 provides that "words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." Obviously, section 21120 cannot be successfully applied here, as the provisions of the trust are in what Pakula accurately describes as "an irreconcilable conflict": Either Article One, section 1.03, subdivision (a) (to the extent it purported to convey community property to the trust) or all of Article Two's statement concerning the funding of the trust had to be rendered inoperative. Pakula claims that the interpretation that invalidates the fewest provisions should be selected; asserts that the court's interpretation of Rina's trust intent contravenes Article One, section 1.03, subdivision (c) (concerning the retained character of any community property conveyed to the trust) and the broad definitions of tangible personal property in Article Six; and concludes that to preserve these provisions of the trust instrument the probate court should have determined that the trust included Rina's interests in community property. Section 21120 requires no such conclusion, and it does not mandate any alternative outcome here.

Next, Pakula contends that application of section 21121 leads to the conclusion that Rina intended to convey her community property interests to the trust. Section 21121 requires that "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." While acknowledging Article Two's explicit statement that the trust contains only separate property, Pakula minimizes this provision, instead relying on Article One, section 1.03, subdivisions (a) and (c), and Article Eight, which includes Rina's statement, "I have specifically disinherited my husband. Therefore, for the purposes of this Article, he shall be deemed to have predeceased me." Although we agree with Pakula that section 21121 governs the interpretation of trust instruments, the probate court already considered the trust as a whole, as well as the extrinsic evidence, and resolved the conflicts in the trust language and the extrinsic

7

evidence with its finding that Rina intended that the trust contain only her separate property as stated in Article Two. Neither Article One, section 1.03, subdivision (c), concerning the retention of community property characterization for any community property that is conveyed to the trust, nor the statement in Article Eight that she has disinherited her husband demonstrates a contrary intent to convey community property to the trust or demonstrates that the court's conclusion was not supported by substantial evidence.

### 3. Extrinsic Evidence

Pakula contends that the probate court "ignored" extrinsic evidence that demonstrated that Rina "intended to prevent Gary from handling, controlling, or receiving any of her assets, whether community or separate." Pakula's assertion that the court ignored evidence is contradicted by the court's express statement in its statement of decision that it considered all the evidence presented.

Pakula then discusses the extrinsic evidence that she claims demonstrated that Rina "intended to prevent Gary from handling, controlling, or receiving any of her assets, whether community or separate." This evidence consists of testimony from Pakula, Rina's sister, Rina's aunt and uncle, Rina's accountant, and a family friend, as well as an excerpt from the deposition of Rina's attorney that was admitted into evidence due to the attorney's unavailability. "'Under the substantial evidence standard of review, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment."' [Citation.] 'All presumptions favor the trial court's ruling, which is entitled to great deference . . . .' [Citation.]" (*In re Estate of Kampen* (2011) 201 Cal.App.4th 971, 992.) Pakula's argument merely establishes a conflict in the evidence. The probate court resolved the

8

conflict by concluding that Rina intended her trust to contain only separate property, and this conclusion is supported by substantial evidence. We may not reweigh the evidence on appeal.

## II. Further Contentions Regarding the Rina Pakula Klein Living Trust

Pakula contends that the probate court erred when it concluded that the Rina Pakula Klein Living Trust revoked the Klein Family Trust with respect to Rina's separate property only, when in fact it revoked the family trust with respect to Rina's share of the community assets as well. Pakula first claims that this was error because the court based its ruling on its incorrect determination that Rina assigned only her separate property to her trust, but our conclusion that the probate court properly found that the trust was intended to include only Rina's separate property disposes of this argument. Pakula next argues that the court's conclusion is "independently analytically flawed" and asserts that the analysis of the trust language and the case law support her conclusion that the Klein Family Trust was revoked with respect to Rina's community property interests as well, but we find no analytical flaw in the conclusion that because Rina's trust was intended only to include her separate property, the creation of that trust did not transfer community property away from the family trust.

Pakula also argues that the probate court erred when it denied her section 850 petitions to transfer Rina's community property interests in six specific items of community property to the Rina Pakula Klein Living Trust. This argument, also based on Pakula's contention that the probate court erred in determining that Rina's trust was intended to contain only her separate property and that she transferred only her separate property to it, fails in light of our conclusion that the probate court's finding that Rina's trust was intended to contain only her separate property was supported by substantial evidence. Pakula has not established any error here.

9

### III.     Effect of Gary's Invocation of the Privilege Against Self-Incrimination

Gary refused to answer discovery requests propounded by Pakula, invoking the privilege against self-incrimination.  (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15; Evid. Code, § 940.)  As a result of Gary's refusal to waive this privilege, the probate court barred him from testifying at trial.  Pakula contends that the bar on testimony was inadequate relief and that she was prejudiced because she "was unable to gather facts that would have assisted her proof of the falsity of Rina's purported Will and First Codicil." She argues that Gary's petition to admit the will to probate should have been stricken instead, and requests that this court remand the matter with instructions to strike Gary's petition.

Pakula, however, stipulated that Rina's will should be admitted and that the codicil be denied probate for lack of due execution.  Having stipulated to the admission of the will, she cannot now appeal its admission to probate.  (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 591 ["'A judgment rendered with consent of the appellant is not appealable'"]; *Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 181-182 [party that stipulated that all discretionary permits were obtained cannot challenge court's finding that the permits were obtained; appellant waives the right to "attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal"].)  While Pakula contends that she was just "mak[ing] the best out of a bad situation," Pakula stipulated to the fundamental issue in a petition to admit a will to probate in exchange for the concession that the codicil not be admitted.  This, therefore, was not a stipulation made to facilitate an appeal following an adverse decision of a critical issue (see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 402-403), or mere acquiescence to the authority of a challenged adverse ruling by proceeding in accordance therewith after making objections.  (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212-213.)  Instead, it was a substantive bargain to forgo opposition to the admission of the will to probate in exchange for avoidance of the impact of admission of the codicil. Having stipulated to the admission of the will to probate, and having received the benefit

of her bargain, Pakula may not attempt on appeal to undo her consent to the will's admission to probate.

## IV. Appointment of Gary as Executor

Rina's will named Gary as executor of her estate. Accordingly, Gary had the right to appointment as her personal representative unless he was incompetent to serve. The only potential basis for considering him incompetent to serve was that there could be grounds for his removal under section 8502 (§§ 8420, 8402, subd. (a)(3).) Because there was no evidence that Gary had wasted, embezzled, mismanaged, or committed a fraud on the estate, or that he was about to do so (§ 8502, subd. (a)); that he was incapable of performing his duties or unqualified for appointment (§ 8502, subd. (b)); that he had wrongfully neglected the estate or long neglected to perform any act as personal representative (§ 8502, subd. (c)), these provisions for removal were not at issue before the probate court. The court concluded that Gary was not precluded from appointment on the ground that his removal would be necessary for the protection of the estate or interested persons (§ 8502, subd. (d)), and appointed him as Rina's executor, finding that "no evidence was presented at trial from which the court could find grounds that Gary would be removed if acting as executor for Rina's estate." Pakula appeals the appointment.

Pakula devotes many pages to her argument, contending that the court's conclusion "makes no sense," is inconsistent with the evidence, and is an abuse of discretion, but the gravamen of her argument is that although she had named him her executor, by the end of her life, Rina would not have wanted Gary to serve as the executor of her estate. She discusses evidence that tends to demonstrate that Rina did not trust Gary at the end of her life and that she feared him, but this evidence does not demonstrate that Gary's removal as executor would be necessary "for protection of the estate or interested persons." (Prob. Code, § 8502, subd. (d).)

Pakula also argues that Gary should not be permitted to serve as executor of Rina's estate because "now that Gary is fully aware of Rina's efforts to secretly disinherit

11

and thwart him, it is unreasonable to assume that Gary would be able to put aside his own anger, resentment and biases in order to fulfill his fiduciary duties to their children as beneficiaries, and to [Pakula], as Rina's intended successor trustee. Moreover, it would be especially inappropriate to appoint Gary as [Pakula's] fiduciary, in light of the fact that they are adversaries" in litigation regarding access to the grandchildren and the Rina Pakula Klein Living Trust. While a conflict of interest may be grounds for removal under section 8502, subdivision (d) and therefore a basis for refusing to appoint a named executor, "not every conflict necessarily requires removal for protection of the estate, depending on the circumstances of the particular case." (Cal. Law Revision Com. Com., West's Ann. Prob. Code foll. § 8502.) Here, Pakula has not presented evidence of any actual conflict of interest, instead asking this court to presume that because of anger and antipathy Gary will fail to fulfill his fiduciary duties to his children and to Pakula as successor trustee. As Pakula has not presented any nonspeculative basis for concluding that Gary would be subject to removal if appointed as executor, she has not demonstrated any error in appointing Gary as Rina's executor.

## DISPOSITION

The judgments and order are affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


WOODS, J.

12