[No. B201357. Second Dist., Div. Seven. Apr. 1, 2009.]

JAMES CHRISTOPHER BRADLEY, Plaintiff and Appellant, v. AMELIA GILBERT, as Trustee, etc., Defendant and Appellant.

**1060**

COUNSEL

Evans, Latham & Campisi, Andrew Zabronsky, Claudia J. Lowder; and John A. Payne, Jr., for Plaintiff and Appellant.

Stewart J. Schwartz for Defendant and Appellant.

OPINION

## WOODS, Acting P. J.—

### INTRODUCTION

This appeal involves a "safe harbor" determination by the probate court in accordance with section 21320 of the Probate Code.[1] The probate court[2] found that a son's proposed petition as successor trustee to marshal the assets in his deceased parents' Bypass and QTIP (qualified terminable interest property) trusts would not constitute a contest of his father's Survivor's Trust and the no contest provision set forth therein. For the reasons hereafter stated, we affirm the judgment.

### FACTUAL AND PROCEDURAL SYNOPSIS

It appears to this court that no significant factual issues are in dispute. The issue is one of law only, i.e., do the safe harbor provisions set forth in section 21320 protect the son, for his proposed petitions, from the extensive no contest clause trust provisions executed by his father, James, prior to his demise. Because the issue is one of law, we review the trial court's ruling de novo. For the most part we adopt the factual presentation set forth in the brief of the son utilizing the well-established principle that intendment on appeal is to uphold the ruling of a trial court unless clear error is demonstrated which results in a miscarriage of justice. In this instance we find none and affirm the order for the reasons hereafter set forth.

*The original trust.*

In 1992, after 50 years of marriage and raising a family together, James P. (James) and Mildred A. (Mildred) Bradley created a joint estate plan in favor of their two adult children, James Christopher Bradley (Chris) and Cynthia

---

[1] Unless context requires otherwise, all statutory references are to the Probate Code.

[2] The probate court will hereafter be referred to as the "trial court" and/or "court" unless context otherwise requires.

Fritz (Cindy),[3] with whom they were very close. James and Mildred executed the declaration of trust of the Bradley Family Trust on September 19, 1992 (the Trust). The Trust provided that upon the death of the first spouse, the Trust was to be divided into three subtrusts, namely, the Surviving Spouse's Trust, the Marital QTIP Trust, and the Family Bypass Trust. The surviving spouse's separate property and one-half of the couple's community property were to be allocated to the Survivor's Trust. After specific bequests to children and grandchildren, the deceased spouse's separate property and the other half of the community property were to be allocated to the QTIP Trust in an amount equal to the minimum amount needed to eliminate or reduce as far as possible federal estate taxes. The balance of the deceased spouse's property was to be allocated to the Bypass Trust.

Plaintiff and appellant, Chris, contends in his opening brief that virtually all his parents' property was composed of community property. Cindy does not contend otherwise.

The Trust provided that when the first spouse died, the QTIP and Bypass Trusts would become immediately irrevocable and nonamendable. But it granted the surviving spouse the power to revoke or amend the Survivor's Trust, subject to the requirement that "[a] community property transferred to the trust shall remain community property after its transfer." Thus, the surviving spouse was restricted from amending the Survivor's Trust in derogation of the spouses' community property interests. It also granted James, if he was the surviving spouse, a power of appointment over the assets in the QTIP Trust. The surviving spouse was to serve as sole trustee, and hence was responsible to properly divide the Trust into subtrusts, allocate assets among them, and administer them according to the Trust terms. In this regard, the Trust authorized the trustee in his reasonable discretion to defer the division of the trust into subtrusts for up to six months, provided "all beneficiary rights in those trust assets shall accrue and vest as of the prescribed time," i.e., the deceased spouse's date of death. The Trust did not require a physical division of assets, but it did direct the trustee to keep a separate accounting for the subtrusts. And while it granted the trustee various powers in administering the subtrusts, it also provided: "Fiduciary Role: The Trustees shall exercise all of the powers in the trustees' fiduciary capacity and only in such capacity. Further, the trustees shall have no power to enlarge or shift any of the beneficial interests under any trust except as an incidental consequence of the trustees' fiduciary duties. . . ." Upon the death of the surviving spouse, the principal of both the Survivor's and QTIP Trusts were

---

[3] The Bradleys and their offspring are referred to in this opinion by their first names not out of disrespect, but solely for the purpose of clarity because they all share the common last name of "Bradley," except for Cindy who later acquired the last name of Fritz.

to roll over into the Bypass Trust, which then was to be distributed equally between Chris and Cindy. Chris was designated as successor trustee upon the surviving spouse's death.

Finally, the Trust contained a no contest clause worded as follows: "Non Contest-Contestant disinherited: If any beneficiary in any manner, directly or indirectly, contests or attacks this instrument or any of its provisions, any share or interest in the trust given to that contesting beneficiary under this instrument is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased the Settlor."

*Amendments to Survivor's Trust and no contest clause.*

Mildred died on October 22, 1994, just over two years after executing the Trust with James. Within a few months of his wife's death, James, then in his 70's, allegedly became romantically involved with one Flora Ibarra, a married woman, who became his live-in companion and caregiver. Over the ensuing years, as James's health deteriorated drastically, Flora Ibarra purportedly insinuated herself into virtually every aspect of James's life, including the controlling of his medication, managing his assets and valuable commercial property, and isolating him from his children, who became increasingly alarmed.

During this same period, from 1995, when James's purported affair with Flora Ibarra began, to 2006 when James died, James allegedly amended his Survivor's Trust nine times. The series of amendments successively reduced the shares of Chris and Cindy, while providing ever larger gifts to Flora Ibarra and her extended family. One amendment eliminated Chris as successor trustee of the Survivor's Trust and nominated appellant Amelia Gilbert (Gilbert), James's office assistant, in his stead. Another made extensive revisions to the no contest clause as follows:

"a. If any beneficiary under this Declaration of Trust, or any legal heir of the surviving spouse or any person claiming under any of them directly or indirectly:

"(1) Contests any trust created hereunder, the Will of the surviving spouse or any other trust created by the surviving spouse or, in any manner, attacks or seeks to impair or invalidate any of their respective provisions;

"(2) Claims entitlement to any asset included in the probate estate of the surviving spouse or in any trust created hereunder or in any other trust created by the surviving spouse by way of any written or oral contract (whether or not such claim is successful);

"(3) Unsuccessfully challenges the appointment of any person named as Executor of the Will of the surviving spouse;

"(4) Unsuccessfully seeks the removal of any person acting as Executor of the Will of the surviving spouse;

"(5) Objects in any manner to any action taken or proposed to be taken in good faith by the Executor of the surviving spouse's Will or by the Trustee of any trust created by the surviving spouse (including, without limitation, the good faith exercise or non-exercise of any discretion granted to the surviving spouse's Executor or Trustee), whether said fiduciary is acting under court order, notice of proposed action or otherwise and whether or not such claim is successful;

"(6) Objects to any interpretation or construction of the Will of the surviving spouse or of any trust created by the surviving spouse that is adopted or proposed in good faith by the Executor of the surviving spouse's Will or the Trustee of such trust (whether or not such objection is successful);

"(7) Files any creditor's claim in the estate of the surviving spouse (without regard to its validity);

"(8) Claims an interest in any property alleged by the Executor of the Will of the surviving spouse to belong to the surviving spouse's estate or alleged by any Trustee of any trust created by the surviving spouse to belong to such trust (whether or not such claim is based on characterizing the surviving spouse's separate property as jointly owned property and whether or not such claim is successful);

"(9) Unsuccessfully challenges the appointment of any person named as Trustee of any Trust created by the surviving spouse;

"(10) Unsuccessfully seeks the removal of any person acting as Trustee of any trust created by the surviving spouse;

"(11) Attacks or seeks to impair or invalidate any of the following:

"Any designation of beneficiaries for any insurance policy on the life of the surviving spouse;

"Any designation of beneficiaries for any pension plan or IRA accounts in which the surviving spouse participates;

"Any trust which the surviving spouse has created or may create during such surviving spouse's lifetime; or

"Any transaction by which the surviving spouse has sold or transferred any asset to MARILYN RUSSELL, to FLORA IBARRA, or to any child or children of the Settlors (whether or not any such attack or attempt is successful); or

"Any transaction by which the surviving spouse, either individually or as Trustee of the Surviving Spouse's Trust, has purchased any asset from the Bradley Family Bypass Trust (whether or not any such attack or attempt is successful);

"(12) Conspires with or voluntarily assists anyone attempting to do any of these things, or

"(13) Refuses a request of the Trustee of any trust created by the surviving spouse or of the Executor of the Will of the surviving spouse or the Executor of the Will of the surviving spouse to assist in the defense against any of the foregoing acts or proceedings;

"then in that event the surviving spouse specifically disinherits each such person, and all such interests given under the surviving spouse's Will and under any trust created by the surviving spouse to that person and to such person's spouse and to such person's issue shall be forfeited as though each of them had predeceased the surviving spouse without issue, and shall augment proportionately the shares of the surviving spouse's estate and the trusts created by the surviving spouse going to such of the beneficiaries hereunder who have not participated in such acts or proceedings.

"b. Expenses to resist any contest or other attack of any nature upon any provision of any trust created hereunder or any other contest or claim described in Paragraph 12.1a shall be paid from such trust as expenses of administration.

"c. In the event that any provision of this Paragraph 12.1 is held to be invalid, void or illegal, the same shall be deemed severable from the remainder of the provisions in this Paragraph and shall in no way affect, impair or invalidate any other provision in this Paragraph. If such provision shall be deemed invalid due to its scope and breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law."

The same amendment added an exoneration clause relieving the trustee of the Survivor's Trust from liability except in cases of "gross negligence, willful misconduct or fraud."

*The safe harbor litigation.*

The children of James allegedly learned for the first time of his demise on June 28, 2006, at the age of 82, when they received a probate notice pursuant to section 16061.7 of a 120-day deadline to contest the Trust. It was at this time that Chris claims to have learned of the nine amendments to the Survivor's Trust.

Chris made further inquiry of Gilbert regarding the Bypass and QTIP Trusts for which Chris was now responsible as successor trustee. Chris was informed that the Bypass Trust held only $177,000 and the QTIP Trust nothing. This information contradicted his understanding, based on certain of his father's documents, including a Personal Financial Statement filed by James with the California Superintendent of Banks a few months prior to Mildred's death in 1994, showing that his parents' jointly held real property was valued at $7.84 million, not including any appreciation over the ensuing 12 years until James's death.

Immediately prior to lapse of the 120-day period provided for in the probate notice, Chris was able to retain counsel, and on December 14, 2006, he filed a safe harbor application under section 21320. The application sought a ruling that two proposed petitions would not violate the relevant no contest provision of the trust. One claimed the invalidity of the gifts to Flora Ibarra and her family on grounds of undue influence and lack of capacity. The other petition claimed the invalidity of these same gifts on grounds Flora Ibarra was a disqualified care provider under section 21350. Gilbert filed her opposition on January 24, 2007. On February 2, 2007, Chris filed an amended safe harbor application. A third proposed petition was added. The latter was a petition Chris proposed to file in his capacity as successor trustee of the Bypass and QTIP Trusts seeking to marshal assets purported to be properly included in those two trusts. Chris sought a judicial determination that no contest would be implicated in the third petition. Flora Ibarra filed opposition to the amended safe harbor application on March 2, 2007. Gilbert filed her opposition on March 5, 2007.

*Hearing on March 6, 2007.*

At the hearing on March 6, 2007, the trial court noted that Chris had conceded that the first two proposed petitions would be contests of the Survivor's Trust. The court indicated that it intended to rule these two petitions were not contests of either the Bypass or QTIP Trusts. After hearing argument on the third proposed petition from both sides, the court requested further briefing on the issue of whether it would be a violation of the no contest clause in the Survivor's Trust based on the possible misallocation of

assets by James as trustee in the face of Chris's duty as James's successor trustee to marshal any of the property into the Bypass and QTIP trusts. The court then continued the hearing to April 11, 2007, and further indicated that a ruling on all three petitions would be made at that time.

*Supplemental briefing requested by the court.*

At the hearing on March 6, 2007, the court indicated it desired further briefing before the April 11, 2007, hearing. As indicated at the March 6, 2007, hearing, the court emphasized that the supplemental briefing should address the question of whether it would be a violation of the no contest clause in the Survivor's Trust based on the possible misallocation of assets by James as trustee and Chris's duty as his successor trustee to marshal any of them properly into the Bypass and QTIP trusts.

On March 27, 2007, Gilbert responded to the court's request for further briefing. Attached as exhibits to her supplemental brief were documents disclosing James's undated allocation of assets among the subtrusts, including the exercise of his power of appointment to transfer all of the assets from the QTIP Trust to the Survivor's Trust. Chris notes in his supplemental briefing that the documents still left open the question of certain marital assets not being allocated to any of the subtrusts which were purportedly not accounted for. As an example, Chris maintains that the documents showed that James did allocate to the Bypass Trust a 31.784 percent interest in prime Long Beach commercial real estate commonly known as the Bradley Building. Chris further maintains, however, that this property had been sold to the Survivor's Trust in 1998 and the selling price appeared to be substantially below the market price and was secured by a loan payable to the Bypass Trust.

In her supplemental briefing, Gilbert contended that James intentionally added the draconian no contest clause to the Survivor's Trust before this sale, and even specifically mentioned it, to protect the sale and other aspects of James's trust allocation from challenge. Gilbert therefore argued that Chris's proposed petition to marshal the assets would be a contest because the express terms of the no contest clause barred it. Gilbert also argued that Chris's petition would be a contest, regardless of whether filed by Chris as trustee or beneficiary, because the petition would impermissibly thwart James's intended estate plan.

Chris filed his supplemental brief on April 3, 2007, arguing that the proposed petition to marshal assets properly in the Bypass and QTIP Trusts, which was to be filed in his capacity as trustee, could not be deemed a contest of the Survivor's Trust without violating public policy. In that regard,

Chris made two arguments. His first argument indicated section 21305, subdivision (b)(6) expressly provides that, "notwithstanding anything to the contrary" in the instrument, "[a] pleading challenging the exercise of a fiduciary power" does "not violate a no contest clause as a matter of public policy." Second, Chris argues further it would be contrary to public policy if the same law which imposes on a trustee the fiduciary duty to marshal trust assets at the risk of surcharge then requires him to forfeit his inheritance for complying with that duty, citing *Estate of Ferber* (1998) 66 Cal.App.4th 244 [77 Cal.Rptr.2d 774] and *Estate of Bullock* (1968) 264 Cal.App.2d 197 [70 Cal.Rptr. 239] as authority.

*The court's safe harbor determination.*

At the hearing on April 11, 2007, the court heard oral arguments by counsel for the parties. Following oral arguments the court took the matter under submission. In the court's April 11, 2007, minute order the court granted the relief sought by Chris on all three proposed petitions. The court held that the first two petitions would not be contests of the Bypass or QTIP Trusts, and that the third petition would not be a contest of either those trusts or of the Survivor's Trust. Specifically, the court held that: "Pursuant to P[robate] C[ode] § 21305(b)(6) . . . [the proposed petition to marshal assets properly in the Bypass and QTIP Trusts] would <u>NOT</u> be a contest. The challenge proposed relates to the fiduciary obligations associated with the allocation of assets among the subtrust[s]. . . . [It] does not invalidate the trust—it addresses the fiduciary obligations of the trustee." (Original underscoring.)

A formal order which included the same language was entered on June 4, 2007. A notice of entry of order was served by Chris on June 12, 2007, and filed on June 20, 2007.

*Gilbert's notice of appeal filed on August 8, 2007.*

On August 8, 2007, Gilbert filed a notice of appeal in her capacity as trustee of the Survivor's Trust, appealing only that portion of the trial court's order stating that the third proposed petition would not be a contest of any of the provisions of the Bypass, QTIP or Survivor's Trusts.

*Chris's cross-appeal filed on August 24, 2007.*

On August 24, 2007, Chris filed a cross-appeal of the trial court's order for the sole purpose of preserving the protection afforded him by section 21320 to make an informed decision about which claims to file or not file after an advance judicial determination.

## DISCUSSION

*Standard of review.*

As previously indicated in the opening paragraph of the "Factual and Procedural Synopsis" part of this opinion, *ante*, this court is of the opinion that our standard of review is de novo in view of the absence of any factual disputes. Chris accurately states this standard of review in his respondent's brief and we adopt that presentation as an accurate statement of the law. "The standard of review where the applicability of a no contest clause is at issue and there are no disputed facts is de novo. (See *Estate of Coplan* (2004) 123 Cal.App.4th 1384, 1388 [20 Cal.Rptr.3d 686], citing *Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168 [11 Cal.Rptr.2d 448].) In addition, the interpretation of section 21305 is a question of law subject to independent review. (See *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1336 [42 Cal.Rptr.3d 244]; *Estate of Hoffman* (2002) 97 Cal.App.4th 1436, 1442 [119 Cal.Rptr.2d 248], superseded by statute on other grounds, as recognized in *Hermanson v. Hermanson* (2003) 108 Cal.App.4th 441, 445 [133 Cal.Rptr.2d 486].)"

*Appellant's contentions.*

Perhaps the clearest, albeit somewhat cryptic, summary and scope of Gilbert's contentions on appeal are found in the "Conclusion" part of her opening brief on appeal where she states: "Appellant respectfully represents that the order approving the Respondent's Application for Determination under Probate Code §21320(b) should be overturned. The broad and detailed no contest clause set forth in the Surviving Spouse's Trust is clearly invoked upon Respondent filing the Proposed Petition to Marshal Assets. Respondent makes no 'challenge' to fiduciary conduct in his role as beneficiary of the Surviving Spouse's Trust and thus Probate Code §21305(b)(6) is inapplicable. The Proposed Petition to Marshal Assets in its breadth and scope is certainly not limited to being a 'challenge to the exercise of fiduciary power'. Indeed in its breadth and scope as a Probate Code §17200 and §850 petition, the Proposed Petition to Marshal assets is so inclusive of attacks on the Surviving Spouse's Trust that it is both a direct and indirect contest to the Surviving Spouse's Trust. Respondent and his sister are both directly subject to the subject no contest clause. Respondent cannot insulate himself from the no contest clause under the guise of making the attacks for the Bypass and QTIP Trusts to which he and [h]is sister are the immediate and only beneficiaries."

*Respondent's contentions.*

Chris's contentions on appeal can broadly be classified as two pronged. Both prongs assert that his proposed petition in the trial court is not a contest

as a matter of public policy. Chris makes this determination by arguing and stating in a terse manner that his conclusion is sound for two reasons, i.e., (1) the statute in question says so, and (2) case law says so. Following the broad outline provided by Chris, we examine the contentions of both parties.

*The statute.*

Our first task is to evaluate the statutory provisions applicable to this appeal and determine whether or not those provisions are free and clear of ambiguity and pass muster under constitutional standards. No issue is raised as to the constitutionality of the applicable standards in this appeal, so no further analysis is required as to constitutional considerations.

Our next major task is to determine whether the statutory provisions are free from ambiguity. We find none and the parties do not raise ambiguity issues. The gravamen of Gilbert's contentions is that the safe harbor statute is not applicable to this case. We find otherwise and access the legislative history of section 21320 to assist us in making the determination of its applicability in this instance. Chris's brief on appeal is convenient and accommodating by providing the relevant history and we repeat that history at this point.

██ "The Probate Code defines a contest as 'an attack in a proceeding on an instrument or on a provision in an instrument.' (Prob. Code § 21300(a).) A no contest clause 'means a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary brings a contest.' (*Id.*, subd. (b).) While no contest clauses in wills and trusts are valid and enforceable in California, it has long been the rule that they must be strictly construed and given no wider scope than is plainly required by their terms. (*Scharlin v. Superior Court, supra,* 9 Cal.App.4th at pp. 168–169; see also *Estate of Hoffman, supra,* 97 Cal.App.4th at p. 1442 [no contest clauses disfavored as requiring a forfeiture and hence strictly construed].)

"Effective in 2001, the Legislature chose to greatly restrict the reach of no contest clauses by declaring that certain actions can *never* constitute a contest *no matter what the no contest clause says.* Section 21305, subdivision (b) provides, among other things, that '*notwithstanding anything to the contrary in any instrument,* the following proceedings do not violate a no contest clause *as a matter of public policy:* . . . (6) *A pleading challenging the exercise of a fiduciary power.* . . .' (Emphasis added.)

"As a Senate Judiciary Committee bill analysis indicated at the time, section 21305 was enacted to protect certain actions, including challenges to fidu-

ciary misconduct, from the scope of no contest clauses in response to a consensus that no contest clauses had been applied overbroadly and inconsistently by the courts. (See AB 1491, Bill Analysis, Sen. Judic. Comm., hearing date March 28, 2000, p. 4 [citing *Burch v. George* (1994) 7 Cal.4th 246 [27 Cal.Rptr.2d 165, 866 P.2d 92] and *Genger v. Delsol* (1997) 56 Cal.App.4th 1410 [66 Cal.Rptr.2d 527] as such instances and asking whether no contest clauses should be 'consigned to the legal scrap heap?'].)[4] Fn. 4 of the brief states: Just this year, the Legislature has gone even further by repealing he enforcement of no contest clauses. (See 2008 Cal. Legis. Serv. Ch. 174 (S.B. 1264).)"

■ We discern that it was the intent of the Legislature to restrict the reach of no contest clauses for which the Legislature opined the courts were guilty of making overly broad applications. For that reason subdivision (b)(6) was added to section 21305 to make it clear that "[a] pleading challenging the exercise of a fiduciary power" was excluded. That is precisely the issue involved in this case. We find as a matter of declared legislative policy the trust provisions in this case must lead this court to conclude that the marshaling of trust assets in Chris's capacity as successor trustee was an error-free decision by the trial court, which must be upheld, unless other higher decisional authority mandates a reversal. We now examine the most prominent decisional authority with this purpose in mind.

*The decisional law.*

■ Initially, we note that neither of the parties to this appeal has presented to this court binding decisional authority on this issue. It appears that the California Supreme Court has not addressed the issue. We are therefore relegated to examining intermediate California Court of Appeal decisions, not as binding authority under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], but as persuasive authority.

Respondent correctly notes that there are as yet no published cases directly construing the scope of section 21305, subdivision (b)(6)'s exemption for pleadings challenging the exercise of fiduciary power. However, existing case law supports a construction that the petition here falls within the scope of that exclusion and thus is not a contest.

---

[4] The decision of the court in *Estate of Rossi, supra,* 138 Cal.App.4th 1325 and its discussion contained in part IA, entitled "*The Statutory Scheme*" and "*A Brief History of the 'No Contest Clause'* " recognize the statutory abrogation of the *Burch* and *Genger* decisions. (*Rossi, supra,* at pp. 1330–1331.)

First, a beneficiary should be able to question the actions of a faithless fiduciary without being subject to the restrictions of such a clause: "[T]he Legislature has determined that in furtherance of the public policy of eliminating errant fiduciaries, a beneficiary who believes a fiduciary is engaged in misconduct should be able to bring the alleged misconduct to the court's attention without fear of being disinherited." (*Estate of Hoffman, supra,* 97 Cal.App.4th at p. 1444 [order seeking removal of executors for breach of fiduciary duty does not violate a no contest clause under § 21305, subd. (b)(7)].) To place barriers to a court's review of alleged fiduciary misconduct would, moreover, be contrary to well-established policy to ensure that estates are properly administered. (See, e.g., *Estate of Bullock, supra,* 264 Cal.App.2d at p. 201.)

Second, cases that have considered the scope and application of section 21305, subdivision (b)(6) in other contexts have concluded that its "safe harbor" protects the ability of beneficiaries to challenge the actions of a fiduciary without subjecting themselves to the no contest clause. (*Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 562 [50 Cal.Rptr.3d 468]; *Hermanson v. Hermanson, supra,* 108 Cal.App.4th at p. 442.) We agree with the reasoning expressed in those cases on this issue, and believe the legislative intent to permit the courts to carry out their function of reviewing claims of breach by fiduciaries supports the application of the safe harbor provision in this case.

■ Gilbert invites this court to make a distinction between a party occupying the capacity of a fiduciary as a trustee on the one hand and one who occupies a dual role, namely, as a trustee coupled with the holder of a beneficiary interest under the trust on the other hand. Gilbert argues that the beneficiary capacity should eliminate the application of section 21305 in this instance. We refuse the invitation. We discern that it was the paramount legislative intent to limit the breadth and scope of "no contest" clauses by the passage of section 21305 when performance of fiduciary obligations are involved and by declaring a public policy, to remove any forfeiture considerations when a fiduciary duty is being challenged. Accordingly, we find the decision of the trial court to be error free and affirm the judgment.

*The protective cross-appeal.*

In view of our decision affirming the order of the trial court, it is unnecessary to further address the merits of Chris's cross-appeal. The cross-appeal is dismissed.

## *DISPOSITION*

The order is affirmed. The appeal of Chris is dismissed. Chris is awarded costs of appeal.

Zelon, J., and Jackson, J., concurred.

A petition for a rehearing was denied April 21, 2009, and the petition of appellant Amelia Gilbert for review by the Supreme Court was denied June 17, 2009, S172860.