Filed 2/26/16  Prichard v. Pergiovanni CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THERESA BROWN PRICHARD, | |
| Plaintiff and Respondent, | E062203 |
| v. | (Super.Ct.No. PROPS1200335) |
| NICHOLAS PERGIOVANNI, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Raymond L. Haight III, Judge.  Affirmed.

Nicholas Pergiovanni, in pro. per. for Defendant and Appellant.

Law Offices of Donald L. Prichard and Donald L. Prichard for Plaintiff and Respondent.

Defendant and appellant Nicholas Pergiovanni, Jr., appeals in propria persona from the probate court's order that, among other things, removes him as cotrustee of the Pergiovanni Family Trust (the Trust), established by his now-deceased parents, and

1

appoints his sister, plaintiff and respondent Theresa Brown Prichard, as the sole trustee. The order also authorizes the liquidation of all the assets of the trust, including the house where defendant resides, with proceeds to be divided between defendant, plaintiff, and their brother Frank Pergiovanni. We find no abuse of discretion by the probate court, and therefore affirm.

## I FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, defendant, and Frank Pergiovanni are siblings who, after the death of their parents, became cotrustees of the Trust. The Trust documents include handwritten "Minutes of Trust" (minutes), which are to be "construed as instructions to the successor trustee" regarding the "allocation and distribution of specific trust assets." Among these specific trust assets is a house in Fontana, California. The minutes instruct that the house "goes to" plaintiff, defendant, and their brother, and that the "house and furnishings should be shared equally," but with the caveat that defendant "is entitled to live in it as long as he resides there." The minutes further state that "[i]n the event that the house is to [be] sold, all three children are to agree upon its sale."

Disputes arose among the siblings as to how to interpret the minutes, including as to whether only defendant should have access to the property, and whether defendant alone had the right to control whether additional boarders or renters should be placed there. Plaintiff initiated these proceedings on May 8, 2012, seeking to remove defendant as a cotrustee of the Trust, an accounting, and appointment of a successor trustee. Defendant filed a petition of his own, requesting either a finding that his cotrustees had

2

"breached the trust" or, in the alternative, to remove them as cotrustees. On August 29, 2013, after a trial, the probate court entered a judgment regarding the proper distribution of the assets of the Trust, without removing or replacing any of the siblings in their roles as cotrustees.

The probate court's August 29, 2013 judgment, among other things, directs plaintiff and Frank Pergiovanni to deed their respective interests in the property to defendant. Defendant, in turn, now as sole owner, is to execute a reverse mortgage on the property, and distribute one third of the proceeds to each of his siblings. The judgment provides additional instructions regarding distribution of the remaining Trust assets, and declares that when the distribution of assets in accordance with the judgment has been completed, the Trust shall be deemed dissolved.

The probate court held several hearings regarding the status of the reverse mortgage to be obtained by defendant. Plaintiff and Frank Pergiovanni apparently performed their obligations under the August 29, 2013 order to deed their interest in the property to defendant.[1] Defendant, however, failed to obtain a reverse mortgage as required. The court rejected one reverse mortgage transaction that was approved by a bank, because the terms were inconsistent with its prior orders allocating expenses of

---

[1] The deeds do not appear in our record, but the probate court refers to defendant as "the owner of the property" in the course of a discussion with defendant as to why he, and not plaintiff or plaintiff's attorney, is required to obtain the reverse mortgage.

3

repairing and maintaining the house to defendant.[2]  Several other applications submitted by defendant were denied by the banks, apparently because of the condition of the house.

After the August 29, 2013 judgment, the probate court held several hearings with respect to the status of the reverse mortgage, among other issues.  Finally, on April 30, 2014, the probate court heard argument on plaintiff's "Motion for Sanctions Against Nicholas Pergiovanni, Jr.," filed December 23, 2013, asking that the court remove defendant as trustee, appoint plaintiff as the sole trustee, and order the assets of the Trust to be liquidated.  The probate court granted the motion, ordering that plaintiff be appointed as sole trustee of the Trust, and granting her authority to liquidate all the Trust assets, including the house, which defendant was ordered to vacate.  The probate court ordered that proceeds of the liquidation be divided among the siblings, with 50 percent to defendant, 25 percent to plaintiff, and 25 percent to Frank Pergiovanni.  The probate court explained that the higher percentage to defendant  was in recognition of the additional rights to the house defendant had been granted under the terms of the Trust, even though defendant's failure to obtain a reverse mortgage made it impossible to "save the house."

---

[2]  Those orders do not themselves appear in our record, but the probate court makes reference to them in the portion of the reporter's transcript that was designated by defendant for inclusion in the record on appeal.

4

## II. DISCUSSION

Defendant contends, among other things, that the probate court erred in removing him as cotrustee of the Trust, appointing a new trustee, and authorizing the Trust assets, including and especially the house, to be liquidated. We disagree.

A probate court has "general power and duty to supervise the administration of trusts." (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.) The probate court "may apply general equitable principles in fashioning remedies and granting relief." (*In re Estate of Kraus* (2010) 184 Cal.App.4th 103, 114.) The probate court's supervisory power includes the authority to remove a trustee, based either on a party's motion or on its own motion. (Prob. Code, § 17200, subds. (a) & (b)(10).) Probate Code section 15642 sets forth the statutory grounds for removing a trustee (§ 15642, subd. (a)). These grounds include "[w]here hostility or lack of cooperation among cotrustees impairs the administration of the trust" (subd. (b)(3)), "[w]here the trustee fails or declines to act" (subd. (b)(4)), and "[f]or other good cause" (subd. (b)(9)). A judgment removing a trustee is reviewed for abuse of discretion. (*Schwartz*, *supra*, at p. 430.)

There is no doubt that defendant, in his role as cotrustee, failed or declined to perform an act required of him by the probate court, namely, to obtain a reverse mortgage and distribute the proceeds equally among the three siblings. Moreover, it is apparently undisputed that there is hostility and a lack of cooperation between defendant and the other cotrustees that has impaired the administration of the trust, making even the simplest distribution of minor portions of the assets of the estate a fraught and sometimes

5

impossible exercise. The probate court acted well within the scope of its discretion in removing defendant as a cotrustee of the Trust, and appointing a sole trustee with the responsibility of making a final distribution of the Trust assets in accordance with the probate court's orders.

Defendant objects that the probate court's ruling effectively "strip[s]" him of his "life estate" in the property, to which he was entitled under the terms of the Trust. The August 2013 judgment entered by the probate court, however, amounts to a ruling that defendant was *not* entitled to a life estate, but rather to 100 percent ownership of the property in fee simple, subject to a reverse mortgage, with a portion of the proceeds from the reverse mortgage distributed to his siblings.[3] Defendant did not timely appeal that judgment, so the probate court's ruling became the final word on the issue. (See *Shultz v. Harney* (1994) 27 Cal.App.4th 1611, 1619 ["The doctrine of res judicata gives conclusive effect to a final judgment rendered upon the merits by a court having jurisdiction of the cause."].) Given that defendant was unable or unwilling to obtain a reverse mortgage as ordered, the probate court had no choice but to devise a remedy appropriate to the circumstances. Defendant has not demonstrated that the remedy the probate court chose was beyond the bounds of reason, so we find no abuse of discretion.

---

[3] The probate court, as well as the parties, have loosely referred to the interest granted to defendant by the Trust, entitling him "to live in [the house] as long as he resides there," as a "life estate." The probate court's August 2013 judgment in effect determined, however, that the trustors' intent was not to give defendant a life estate, in the strict sense of the term, as discussed in the text above. (See 12 Witkin, Summary of California Law (10th Ed. 2005) Real Property, § 24, pp. 78-79, § 29, pp. 82-83 [discussing nature of life estate].)

Defendant further argues that the probate court erred in failing to order plaintiff and Frank Pergiovanni to return certain funds withdrawn from a bank account that was part of the trust assets. Again, however, this is a matter that was litigated by the parties and was resolved by the probate court's August 2013 judgment; the probate court ruled defendant was entitled to the funds remaining in the account, and (implicitly) not entitled to return of the funds previously withdrawn from the account. Defendant failed to timely appeal that judgment, so we will not revisit the issue.

Defendant also contends that plaintiff "deceive[d] the court wherein she failed to attach the entire trust agreement in her initial Petition filing in the probate court . . . ." Defendant failed to include plaintiff's "initial Petition filing" as part of the record on his appeal, so we cannot judge the truth of this assertion. In any case, however, it is apparent from the record that the probate court was well aware of the purportedly omitted portion of the Trust documents at all times relevant to the present appeal. Defendant's assertion, even if true, does not demonstrate any error by the probate court.

Finally, defendant asserts that plaintiff, by bringing her petition seeking his removal as cotrustee, in effect contested the Trust, in violation of the Trust's no contest clause. Not so. Plaintiff did not "contest[] or attack[] [the Trust] or any of its provisions," but rather contended defendant had breached his duties as cotrustee of the Trust, and sought remedies for that alleged breach. Generally, a pleading challenging a trustee's exercise of his or her fiduciary power does not violate a no contest clause, regardless of the precise terms of the instrument, as a matter of public policy. (*Bradley v.*

7

*Gilbert* (2009) 172 Cal.App.4th 1058, 1071.)  We need not address plaintiff's argument that the issue of the no contest clause was not properly raised in the probate court; assuming the argument was raised below and adequately preserved for appeal, it is nevertheless without merit.

## III.  DISPOSITION

The order appealed from is affirmed.  Plaintiff is awarded her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST

J.

We concur:


RAMIREZ

P. J.

CODRINGTON

J.